**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
AMERICAN POSTAL WORKERS UNION,    :
AFL-CIO,                          :
                                  :
          Plaintiff,              :
                                  :
     v.                           :  Civil Action No. 08-1214 (JR)
                                  :
GEORGE W. BUSH, President of the  :
United States, et al.,            :
                                  :
          Defendants.             :
```

**MEMORANDUM**

The American Postal Workers Union (APWU) petitions for a writ of mandamus ordering compliance with 39 U.S.C. § 206, which requires the President to appoint members to a Postal Service Advisory Council, and requires the Postmaster General to consult with the Council before making operational decisions. The defendants move to dismiss, arguing, among other things, that they do not have to comply with 39 U.S.C. § 206 because it has been superseded. They are correct, and their motion will be granted.

The brief history of the Postal Service Advisory Council begins in 1970 with the passage of the Postal Reorganization Act (PRA). The PRA removed the Post Office Department from the Cabinet and created the United States Postal Service (USPS) -- an "independent establishment of the executive branch." 39 U.S.C. § 201. USPS' newfound independence was curtailed, however, by section 206 of the PRA, which required

USPS to "consult with and receive the advice of" a Postal Service Advisory Council made up of the Postmaster General, the Deputy Postmaster General, and eleven additional members appointed by the President.  Id. § 206.  Four of the members would be chosen from labor unions that represented USPS employees, like the APWU. Id.

Just two years later, in an effort to curb the "wasteful expenditure of public funds for worthless committee meetings and biased proposals," Pub. Citizen v. Dep't of Justice, 491 U.S. 440, 453 (1989), Congress passed the Federal Advisory Committee Act (FACA).  The FACA mandated that:

> Each advisory committee which is in existence on the effective date of this Act [January 1, 1973] shall terminate not later than the expiration of the two-year period following such effective date unless . . . in the case of an advisory committee established by an Act of Congress, its duration is otherwise provided for by law.

5 U.S.C. App. 2 § 14(a).  Accordingly, the Postal Service Advisory Council was terminated in January 1975.  See Dkt. 9, Ex. C (1977 Commission on Postal Service Report).

The APWU now seeks to revive the Council on the strength of my recent decision in Am. Postal Workers Union v. United States Postal Serv., 541 F. Supp. 2d 95 (D.D.C. 2008). There, the APWU alleged that USPS had violated the FACA by excluding APWU members from meetings of the Mailer's Technical Advisory Committee (MTAC), a group that USPS had created to

- 2 -

obtain advice from major mail users.  I held that USPS was exempt from the FACA's requirements under section 410 of the PRA and dismissed the case.  Id. at 95.  The APWU now argues that if USPS is not bound by the FACA, then the FACA should not have prompted the termination of the Postal Service Advisory Council.

That reasoning glosses over the language of section 410 of the PRA, which states:

> Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service.

39 U.S.C. § 410(a).[1]  In my previous opinion, I found that the FACA was a "Federal law dealing with . . . employees, budgets, or funds," and held, accordingly, that it did not apply to USPS' decision to form the MTAC.  Am. Postal Workers Union, 541 F. Supp. 2d at 95-96.  But the creation and operation of the MTAC was an "exercise of the powers of the Postal Service."  See Dkt. 9, Ex. D (Postal Department Headquarters Circular No. 65-13 (May 27, 1965), creating the MTAC by order of the Postmaster General).  By contrast, the creation of the Postal Service

---

[1] Subsection (b) of this section lists a handful of federal laws -- including, for example, the Civil Rights Act and the Privacy Act -- that are not relevant here.

Advisory Council was an exercise of congressional authority.  See 39 U.S.C. § 206(a) ("There shall be a Postal Service Advisory Council") (emphasis added); id. § 206(b) ("The Postal Service shall consult with and receive the advice of the Advisory Council") (emphasis added).  Section 410 does not limit the applicability of federal laws to congressional action, even if that action happens to implicate USPS.

This result is not "fundamentally at odds with [the] PRA as a whole and the basic philosophy and purpose of the Act," as the APWU contends.  See Dkt. 11, at 13.  Quite the opposite.  The purpose of the PRA was to establish a more independent federal postal service, free from the restrictions that limit the conduct of other federal agencies.  Forcing USPS to consult with an advisory council before making operational decisions is precisely the kind of bureaucratic barrier the PRA was intended to eliminate.  Erecting that barrier once more, as the APWU would have me do, would undermine, not effectuate, the purpose of the PRA.

The APWU also halfheartedly argues that even if "the FACA negated operation of Section 206 in 1974, any ambiguity as to the continued vitality of Section 206 was resolved by the passage of the [Postal Accountability and Enhancement Act of 2006]" because it "adopted various major revisions of the PRA . . . but did not eliminate Section 206."  Dkt. 11, at 17-18.

I can hardly take Congress' failure to affirmatively eliminate a superseded section of the federal code as a sign that it wishes to render that section operable once more.

The defendants' motion to dismiss [#9] is **granted** by the accompanying order.[2]

```
                              JAMES ROBERTSON
                              United States District Judge
```

---

[2] Although I am granting the motion to dismiss, I would urge government counsel to stop using adjectives like "brazen" and "inconceivable" to describe opposing arguments.  Such language annoys without convincing.